UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES WERNER,

                    Plaintiff,

          v.

3FORGE LLC,

                    Defendant.

No. 24 CV 04645 (LAP)

ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant 3forge LLC's motion to seal the docket in this matter or "at a minimum, [seal] the Complaint and the Motion to Dismiss (and supporting documents)."  (Dkt. no. 15.)  The motion is unopposed.  For the following reasons, the motion is granted to the extent of redacting from the documents the allegations of misconduct contained therein against a third party.

## I.    Facts

On June 11, 2024, 3forge filed an arbitration demand against Plaintiff James Wener ("Werner") for violation of the terms of his employment agreement pursuant to the arbitration clause contained therein.  Seven days later, on June 18, 2024,

1

Werner filed the complaint in this Court.  On August 19, 2024, 3forge filed a motion to dismiss the Complaint.

On or about August 27, 2024, 3forge wrote a Rule 11 letter to Werner demanding withdrawal of the complaint within the safe harbor provision of Fed. R. Civ. P. 11(b)(2).  On September 12, 2024, the parties filed a Stipulation of Dismissal Without Prejudice dismissing the complaint.  Thereafter, the parties proceeded to arbitration and, prior to hearing, resolved the claims asserted therein by way of settlement on or about December 23, 2025.  As part of the settlement, Werner executed a Declaration in Support of the Motion to Seal.  (Dkt. no. 15, Ex. 1.)

## II.  Applicable Law

As the Court of Appeals laid out in Lugosch, et. al. v. Pyramid Co. of Onondaga, et. al., 435 F. 3d 110 (2d Cir., 2006):

> The common law right of public access to judicial documents is firmly rooted in our nation's history. See Amodeo I, 44 F.3d at 145. We have explained the rationale for this right as follows:
>
>> The presumption of access is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice. Federal courts exercise powers under Article III that impact upon

2

> virtually all citizens, but judges, once nominated and confirmed, serve for life unless impeached through a process that is politically and practically inconvenient to invoke. Although courts have a number of internal checks, such as appellate review by multi-judge tribunals, professional and public monitoring is an essential feature of democratic control. Monitoring both provides judges with critical views of their work and deters arbitrary judicial behavior. Without monitoring, moreover, the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings. Such monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions.

United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir.1995) ("Amodeo II").

As Judge Alison Nathan has explained, under this test, the Court must: "(i) determine whether the documents in question are 'judicial documents'; (ii) assess the weight of the common law presumption of access to the materials; and (iii) balance competing considerations against the presumption of access. Doe v. City of New York, No. 15-CV-117 (AJN), 2019 WL 4392533 at *1 (S.D.N.Y. Sept. 13, 2019) (citing Lugosch, supra.).

With respect to whether the documents in question are judicial documents, the Court of Appeals has noted that:

> [T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access. We think that the item filed must be relevant to the

3

performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document.

United States v. Amodeo,   44 F.3d 141, 145. (2d Cir. 1995).)

With respect to the weight of a common law presumption of access:

> [T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.

Amodeo II, 71 F.3d at 1049.

Finally, after determining the weight of the presumption of access, the court must "balance competing considerations against it." Id. at 1050.  Such countervailing factors include "'the privacy interests of those resisting disclosure.'" Lugosch, supra, 435 F.3d at 120, quoting Amodeo II.

### III. Discussion

As noted above, the facts in this case are unusual. Pursuant to an arbitration argument, the employer initiated arbitration.  Thereafter, the employee filed the complaint in this Court and, after receiving a Rule 11 letter demanding withdrawal, Plaintiff withdrew the complaint.  The parties then participated in the arbitration and settled the matter.  Thus,

4

the complaint and the necessary motion to dismiss were documents that never should have been filed in this Court in the first place because the parties had clearly agreed to arbitration. Thus, for purposes of analysis, the "mere filing of [the complaint and motion to dismiss] with the Court is insufficient to render th[ose] paper[s] judicial document[s]" because they never should have been filed in the Court. Accordingly, the Court finds that the complaint and the motion to dismiss are not judicial documents.

Even if the filing of the complaint and the motion to dismiss were sufficient to render them judicial documents, the same reasoning dictates that the weight to be given any presumption of access is minimal, at best. These documents came within the Court's purview "solely to ensure their irrelevance." Lugosch, supra, 435 F.3d at 119.

Finally, courts are especially vigilant against "purely prurient interest in the display or disclosure of otherwise embarrassing private or familial information obtained through the Courts." Mirlis v. Greer, 952 F.3d 51, 62, (2d Cir. 2020) (citing Nixon v. Warner Comms., Inc., 435 U.S. 589, 601 (1978))." Under the unique circumstances in this case, this unproven embarrassing, private, familiar information should be shielded from public view. As noted above, the complaint

5

alleges embarrassing private conduct and concern for a spousal relationship.  No First Amendment value will be served by disclosure.

In order to serve the public's interest in monitoring the Court's performance of its duties, however slight in this case, counsel shall be permitted to redact the allegations of misconduct by the third party not named in the action from the documents and to refile redacted copies.

## IV.  Conclusion

The motion to seal [dkt. no. 15] is granted to the extent of permitting counsel to refile the Complaint and motion to dismiss with the embarrassing, private, familial information redacted.  The Clerk of Court shall close docket number 15.

**SO ORDERED.**

Dated:     April 29, 2026
           New York, New York

_____
LORETTA A.  PRESKA
Senior United States District Judge

6